**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 23-276** |
| **DERRICK HINES** | **SECTION "G"** |

## <u>ORDER AND REASONS</u>

Before the Court is Defendant Derrick Hines' ("Hines") Motion to Dismiss Indictment.[1] Hines moves the Court to dismiss the single-count Indictment, arguing that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied to Hines.[2] The government opposes the motion.[3] For the reasons discussed in more detail below, the Court finds that Section 922(g)(1) is constitutional both on its face and as applied to Hines. The Fifth Circuit's ruling in *United States v. Diaz*[4] forecloses the facial challenge to Section 922(g)(1). Hines' as-applied challenge fails because the government has shown that applying Section 922(g)(1) to Hines "is consistent with this Nation's historical tradition of firearm regulation."[5] Therefore, having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

---

[1] Rec. Doc. 30.

[2] *Id.*

[3] Rec. Doc. 34.

[4] 116 F.4th 458 (5th Cir. 2024).

[5] *Id.* at 467 (quoting *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022)).

## I. Background

On December 14, 2023, a federal grand jury in the Eastern District of Louisiana indicted Hines on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[6] The Indictment alleges that Hines has prior disqualifying felony convictions: (1) a 1996 conviction for possession with intent to distribute crack; (2) a 2009 conviction for possession of crack; and (3) a 2015 conviction for simple robbery and possession of a firearm by a convicted felon.[7]

On November 13, 2024, Hines filed the instant motion to dismiss.[8] On December 2, 2024, the government filed an opposition to the motion to dismiss.[9] On December 9, 2024, Hines filed a reply brief in further support of the motion to dismiss.[10] Hines waived an in-person hearing on the motion, agreeing to submit the motion on the briefs without oral argument.[11]

## II. Parties' Arguments

### A.    *Hines' Arguments in Support of the Motion*

First, Hines argues that Section 922(g)(1), which makes it "unlawful for any person who has been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year" to be in possession of a firearm or ammunition, is unconstitutional as applied to him under the Second Amendment as interpreted in *New York State Rifle & Pistol Ass'n, Inc. v.*

---

[6] Rec. Doc. 1.

[7] *Id.*

[8] Rec. Doc. 30.

[9] Rec. Doc. 34.

[10] Rec. Doc. 37.

[11] A hearing is not required pursuant to Federal Rule of Criminal Procedure 43(b)(3) because the motion involves only a question of law.

*Bruen*.[12] Hines asserts this case is distinguishable from *United States v. Diaz*,[13] where the Fifth Circuit held that the Section 922(g)(1) is constitutional as applied to a defendant previously convicted of car theft.[14]

Hines argues Section 922(g)(1) is unconstitutional as applied to him because there is no historical evidence to show that disarming individuals with prior convictions similar to his is consistent with the Nation's historical tradition of firearm regulation.[15] Even if the government could identify historical regulations justifying temporary disarmament, Hines asserts Section 922(g)(1) would still be unconstitutional because there is no historical support for permanently prohibiting firearm possession.[16]

Second, Hines argues that Section 922(g)(1) is facially unconstitutional.[17] However, he acknowledges that this argument is foreclosed by the Fifth Circuit's ruling in *Diaz*.[18]

Third, if the Court determines that Section 922(g)(1) is constitutional as applied to him, Hines argues it must be struck down as unconstitutionally vague.[19] Under the piecemeal approach now increasingly employed by courts to resolve challenges to Section 922(g)(1), Hines argues the statute no longer prohibits firearm possession by all persons previously convicted of crimes

---

[12] 597 U.S. 1 (2022).

[13] 116 F.4th 458 (5th Cir. 2024).

[14] Rec. Doc. 30-1 at 7.

[15] *Id.* at 8.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* at 10.

punishable by more than a year of imprisonment.[20] Because the statute is being construed to punish firearm possession by an uncertain subset of individuals, Hines argues the statute is unconstitutionally vague, as it no longer provides fair notice to distinguish what subset of individuals previously convicted of crimes punishable by more than a year of imprisonment have a constitutionally protected right to possess a firearm.[21]

Finally, Hines asserts Section 922(g)(1) is unconstitutional because it exceeds Congress's power to regulate commerce.[22] However, he acknowledges this argument is foreclosed by Fifth Circuit precedent.[23]

**B.       The Government's Arguments in Opposition to the Motion**

The government asserts that Section 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation.[24] The government contends that disarming Hines based on his drug and robbery convictions is consistent with the historical tradition of firearms regulation in the United States.[25] If the theft conviction at issue in *Diaz* was disqualifying, the government posits Hines' conviction for simple robbery and being a felon in possession of a firearm, which together demonstrate a robbery involving a gun, are also disqualifying.[26]

---

[20] *Id.*

[21] *Id.*

[22] *Id.* at 12.

[23] *Id.* (citing *United States v. Seekins*, 2022 WL 3644185, at *2 (5th Cir. Aug. 24, 2022)).

[24] Rec. Doc 34.

[25] *Id.* at 8.

[26] *Id.*

The government concedes that there was no founding-era law prohibiting drug distribution because most illegal drugs sold today did not even exist at the time of the founding.[27] However, the government points out that the Supreme Court has warned against being too formalistic in "historical analogue" comparisons.[28] Considering the concern of danger and violence with drugs, the government argues that Hines' prior convictions should bar him from possessing firearms under this principle as demonstrated by the "going armed" laws discussed in *Rahimi* and *Diaz*.[29]

The government posits that the central question is "whether founding-era legislatures would have understood their powers to include the ability to pass laws to combat a similar problem, including laws imposing severe criminal punishments and/or estate forfeiture."[30] The government points to founding-era legislation criminalizing the trafficking of contraband, which aimed to curb marketplaces trafficking in illicit goods.[31] Therefore, the government argues prohibiting firearm possession for felony convictions of possessing cocaine, a schedule II substance, and tramadol are consistent with the Nation's regulatory tradition.[32]

Next, the government argues Section 922(g)(1) is not unconstitutionally vague because the prohibited conduct is clearly defined with sufficient definiteness.[33] Finally, the government notes

---

[27] *Id.* at 10.

[28] *Id.* (quoting *Bruen*, 597 U.S. at 27).

[29] *Id.* at 11.

[30] *Id.* at 10.

[31] *Id.* at 11 (citing 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619*, 130 (1819); *An Act to Establish the Post-Office and Post Roads within the United States*, § 17 1 Stat. 232, 237 (1792); *An Act for the Punishment of Certain Crimes Against the United States*, §§ 115, 1 Stat. 112, 115 (1790)).

[32] *Id.* at 11.

[33] *Id.* at 14.

that Hines' facial Second Amendment challenge and Commerce Clause challenge are foreclosed by Fifth Circuit precedent.[34]

## C.    *Hines' Arguments in Further Support of the Motion*

Hines argues that the government improperly relies on "dangerousness" arguments, which are not relevant to the *Diaz* analysis.[35] With respect to the robbery conviction, Hines points out that the government does not cite a single historical law regarding robbery or being a felon in possession of a firearm.[36] With respect to the drug convictions, Hines argues the contraband-and-drugs analogy both lack historical support and fails the "relevantly similar" analogical reasoning test.[37] Hines contends the government cannot rely solely on "going armed" laws, as *Diaz* explicitly cited going armed laws only to address the "how" of felon disarmament, but not the "why."[38]

Next, Hines argues the government's "post-founding era tradition" argument is both historically inaccurate and foreclosed by precedent.[39] Finally, Hines argues the government's reliance on laws that discriminated on the basis of race and religion is misplaced and inconsistent with *Bruen* and *Diaz*.[40] Hines contends none of those laws disarmed people like him based on

---

[34] *Id.* at 16.

[35] Rec. Doc. 37 at 2.

[36] *Id.* at 4.

[37] *Id.* at 5.

[38] *Id.* at 9.

[39] *Id.* at 12.

[40] *Id.*

criminal convictions.[41] Hines asserts that the government is relying on the same type of means-end scrutiny that the Supreme Court rejected in *Bruen*.[42]

### III. Applicable Law

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Among other defenses, objections or requests available under Federal Rule of Criminal Procedure 12(b), a party may move to dismiss an indictment based on "a defect in the indictment," including "failure to state an offense."[43] "The propriety of granting a motion to dismiss an indictment . . . is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. . . . If a question of law is involved, then consideration of the motion is generally proper."[44]

### IV. Analysis

Hines raises both a facial challenge and an as-applied challenge to 18 U.S.C. § 922(g)(1). "A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications. So classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy,' but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation."[45] "When a litigant brings both as-applied and facial challenges, [courts]

---

[41] *Id.* at 13.

[42] *Id.*

[43] Fed. R. Crim. P. 12(b)(3)(B)(v).

[44] *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (internal citations omitted).

[45] *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) (quoting *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010)).

generally decide the as-applied challenge first because it is the narrower consideration."[46]

In *Diaz*, the Fifth Circuit held that Section 922(g)(1) is constitutional as applied to a defendant with predicate convictions for car theft, evading arrest, and possessing a firearm as a felon.[47] Because the Fifth Circuit held that Section 922(g)(1) is constitutional in at least one application, Hines cannot show "that no set of circumstances exists under which [Section 922(g)(1)] would be valid."[48] Therefore, Hines' facial challenge must fail. Before addressing whether the statute is unconstitutional as applied, the Court lays out the relevant Second Amendment jurisprudence on the issue.

## A.    *Relevant Second Amendment Jurisprudence*

Section 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition." Hines argues that this statute violates the Second Amendment because it infringes on his right to possess firearms.

The Second Amendment states, "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." In *District of Columbia v. Heller*, the Supreme Court struck down "a District of Columbia prohibition on the possession of usable handguns in the home," finding that the statute violated the Second Amendment.[49] The Supreme Court explained "that the Second Amendment . . . codified a pre-existing right" for individuals to "possess and carry weapons in case of confrontation."[50] However,

---

[46] *Buchanan v. Alexander*, 919 F.3d 847, 852 (5th Cir. 2019).

[47] *Diaz*, 116 F.4th at 471–72.

[48] *United States v. Salerno*, 481 U.S. 739, 745 (1987).

[49] 554 U.S. 570, 573 (2008).

[50] *Id.* at 592.

the Court recognized that, "[l]ike most rights, the right secured by the Second Amendment is not

unlimited," and can be subject to certain restrictions, such as the "longstanding prohibitions on the

possession of firearms by felons and the mentally ill."[51]

Following *Heller*, the Fifth Circuit "adopted a two-step inquiry for analyzing laws that

might impact the Second Amendment."[52] Both before and after *Heller*, the Fifth Circuit repeatedly

held that Section 922(g)(1) does not violate the Second Amendment.[53] However, this precedent

pre-dates the Supreme Court's recent opinion in *New York State Rifle & Pistol Ass'n v. Bruen*.

*Bruen* abrogated the two-step approach that the Fifth Circuit and other courts had adopted

following *Heller*.[54] The Supreme Court held:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the
> Constitution presumptively protects that conduct. To justify its regulation, the
> government may not simply posit that the regulation promotes an important
> interest. Rather, the government must demonstrate that the regulation is consistent
> with this Nation's historical tradition of firearm regulation. Only if a firearm
> regulation is consistent with this Nation's historical tradition may a court conclude
> that the individual's conduct falls outside the Second Amendment's "unqualified
> command."[55]

---

[51] *Id.* at 626.

[52] *United States v. McGinnis*, 956 F.3d 747, 753 (5th Cir. 2020) (internal citations and quotation marks omitted). The two-step inquiry proceeded as follows:

> First, we ask whether the conduct at issue falls within the scope of the Second Amendment right.
> To make that determination, we look to whether the law harmonizes with the historical traditions
> associated with the Second Amendment guarantee. If the burdened conduct falls outside the scope
> of the Second Amendment, then the law is constitutional and the inquiry is over. Otherwise, we
> proceed to step two, where we must determine and apply the appropriate level of means-ends
> scrutiny—either strict or intermediate.

*Id.* at 754 (internal citations and quotation marks omitted).

[53] *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004); *United States v. Darrington*, 351 F.3d 632, 633–34 (5th Cir. 2003); *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001).

[54] *Bruen*, 597 U.S. at 17.

[55] *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

However, Justices who joined the majority's decision in *Bruen* underscored that the opinion does not overturn the longstanding prohibitions on firearm possessions by felons.[56]

Recently, in *United States v. Rahimi*, an eight-justice majority of the Supreme Court upheld the constitutionality of 18 U.S.C. § 922(g)(8), a statute prohibiting the possession of firearms by persons subject to domestic violence restraining orders.[57] The Court found that Section 922(g)(8) "fits comfortably" in the Nation's tradition of "preventing individuals who threaten physical harm to others from misusing firearms."[58] The Court reasoned that surety laws and "going armed" laws are appropriate historical analogues to Section 922(g)(8).[59] Surety laws required individuals to post bonds whenever there was a "probable ground to suspect of future misbehaviour," and they were used to "prevent all forms of violence, including spousal abuse" and the misuse of firearms.[60] Going armed laws prohibited "riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land."[61]

Like Section 922(g)(8), the majority found that surety and going armed laws were used "to mitigate demonstrated threats of physical violence."[62] The Court also reasoned that

---

[56] *Id.* at 81 (Kavanaugh, J., concurring) (Roberts, J., joining) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.") (quoting *Heller*, 554 U.S. at 626); *Id.* at 72 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller or McDonald v. Chicago* about restrictions that may be imposed on the possession or carrying of guns.").

[57] *Rahimi*, 144 S. Ct. at 1903.

[58] *Id.* at 1897.

[59] *Id.* at 1899–1900.

[60] *Id.*

[61] *Id.* at 1900.

[62] *Id.* at 1901.

Section 922(g)(8)'s burden on the Second Amendment is comparable to the burdens imposed by surety and going armed laws because those laws did not "broadly restrict arms use by the public generally."[63] The Court explained that violating these laws could result in imprisonment, and that "if imprisonment was permissible to respond to the use of guns to threaten the physical safety of others, then the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible."[64] The Court concluded that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others."[65]

Following the Supreme Court's opinion in *Rahimi*, the Fifth Circuit upheld the constitutionality of 18 U.S.C. § 922(g)(1), the felon in possession statute also at issue here.[66] In *United States v. Diaz*, the Fifth Circuit applied *Bruen*'s two-part test to Section 922(g)(1).[67] At the first step, the Fifth Circuit held that, despite Diaz's felon status, he was a member of "the people" as the term is used in the Second Amendment.[68] At the second step, the Fifth Circuit found that Section 922(g)(1), as applied in Diaz's case, is "consistent with the Nation's historical tradition" of regulating firearm use.[69]

The Fifth Circuit noted that Diaz had a previous felony theft conviction, and numerous colonial-era laws "severely punish[ed] people like Diaz who had been convicted

---

[63] *Id.*

[64] *Id.* at 1902.

[65] *Id.*

[66] *Diaz*, 116 F.4th at 458.

[67] *Id.* at 466.

[68] *Id.*

[69] *Id.*

of theft," often by way of the death penalty.[70] The Fifth Circuit found that these capital punishment laws were similar in purpose to Section 922(g)(1)'s gun restriction—both laws sought to "deter violence and lawlessness."[71] The Fifth Circuit also found that founding-era capital punishment laws and Section 922(g)(1) carried a similar approach by permanently punishing offenders as a result of their serious crime.[72]

The Fifth Circuit also relied on the going armed laws common to the founding era, which authorized permanent dispossession of firearms for people that carried them publicly in a threatening or offensive manner.[73] The Fifth Circuit reasoned that "[t]he size of these laws' burden on the right to bear arms is comparable to that of [Section] 922(g)(1). They both provide for permanent arms forfeiture as a penalty."[74] Accordingly, the Fifth Circuit found that "[i]mposing permanent disarmament as a punishment is [] within our Nation's history and tradition."[75] For these reasons, the Fifth Circuit concluded that Section 922(g)(1) is constitutional both on its face and as applied to Diaz.[76]

## B.    *Whether Section 922(g)(1) is Unconstitutional as Applied to Hines*

"The plain text of the Second Amendment covers the conduct prohibited by [Section] 922(g)(1)."[77] Therefore, the first step of the *Bruen* analysis is satisfied and "[t]he burden thus shifts

---

[70] *Id.* at 468–69.

[71] *Id.* at 469.

[72] *Id.*

[73] *Id.* at 470.

[74] *Id.* at 471.

[75] *Id.* at 471–72.

[76] *Id.* at 470.

[77] *Diaz*, 116 F.4th at 467.

to the government to demonstrate that regulating [Hines'] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'"[78] "To satisfy this burden, the government must 'identify a well-established and representative historical analogue, not a historical twin."[79] "Evidence must be 'relevantly similar' to the challenged law."[80] "In assessing similarity, [the Court] consider[s] 'whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified.'"[81]

Hines' criminal history includes convictions for possession with intent to distribute crack, possession of crack, simple robbery, and possession of a firearm by a convicted felon.[82] To survive Hines' as-applied challenge under the Second Amendment, "the government must demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to this."[83]

The simple robbery conviction is similar to the theft conviction considered by the Fifth Circuit in *Diaz*. In *United States v. Schnur*, the Fifth Circuit applied *Diaz* to a defendant with prior convictions for robbery and burglary.[84] Based on Schnur's two theft-related felony convictions, the Fifth Circuit held "*Diaz* forecloses Schnur's as-applied challenge." Based on Hines' robbery conviction, the Court finds that *Diaz* and *Schnur* foreclose his as-applied challenge.

Additionally, Hines' drug possession and trafficking convictions lend further support to

---

[78] *Id.* (quoting *Bruen*. 597 U.S. at 24).

[79] *Id.* (quoting *Bruen*. 597 U.S. at 30).

[80] *Id.* (quoting *Bruen*. 597 U.S. at 29).

[81] *Id.* (quoting *Bruen*. 597 U.S. at 29).

[82] Rec. Doc. 1.

[83] *Diaz*, 116 F.4th at 467.

[84] *United States v. Schnur*, No. 23-60621, 2025 WL 914341, at *5 (5th Cir. Mar. 26, 2025).

the constitutionality of Section 922(g)(1) as applied to Hines. There are no founding-era laws prohibiting drug trafficking, as many of the illegal drugs distributed today did not even exist at the time of the Nation's founding. However, "[t]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791."[85] The government need not identify a "historical twin," it need only identify a "historical analogue."[86]

To meet this burden, the government primarily relies on founding-era laws criminalizing possessing and/or trafficking contraband.[87] The government cites a 1748 Virginia law authorizing imposition of the death penalty for trading of a stolen horse, a 1792 federal law authorizing imposition of the death penalty for mail theft, and a 1790 federal law that authorized imposition of the death penalty for the making or trading of counterfeit and forged securities.[88] As the Fifth Circuit has reasoned, if capital punishment was a permissible response to possessing and/or trafficking contraband, "then the lesser restriction of permanent disarmament that [Section] 922(g)(1) imposes is also permissible."[89] Accordingly, the founding-era laws cited by the government are "relevantly similar" evidence "establish[ing] that our country has a historical tradition of severely punishing people like [Hines] who have been convicted" of possessing and trafficking contraband.[90]

The government also cites founding-era "going armed" laws, which allowed for the

---

[85] *Rahimi*, 144 S. Ct. at 1897–98.

[86] *Id.* at 1903.

[87] Rec. Doc. 27 at 10 (citing 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619*, 130 (1819); *An Act to Establish the Post-Office and Post Roads within the United States*, § 17 1 Stat. 232, 237 (1792); *An Act for the Punishment of Certain Crimes Against the United States*, §§ 115, 1 Stat. 112, 115 (1790)).

[88] *Id.*

[89] *Diaz*, 116 F.4th at 469.

[90] *Id.* at 470.

disarming of individuals convicted of serious crimes because they may pose a risk of violence or other danger to public safety.[91] In *Rahimi*, the Supreme Court recognized that "[f]rom the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others."[92] These founding-era laws recognize that this conduct "disrupted the public order . . . and le[d] almost necessarily to actual violence."[93]

In *Diaz*, the Fifth Circuit held that Section 922(g)(1) is constitutional as applied to an individual previously convicted of theft, which the court recognized did "not inherently involve a threat of violence."[94] Additionally, application of the felon-in-possession statute to drug criminals aims to address a *risk* of violence. Congress has long recognized "that drugs and guns are a dangerous combination."[95] "Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed."[96] "This history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons."[97] Therefore, the government has met its burden of showing that applying Section 922(g)(1) to Hines "is consistent with this Nation's historical tradition of firearm regulation."[98]

---

[91] Rec. Doc. 46 at 9.

[92] *Rahimi*, 144 S. Ct. at 1899.

[93] *Id.*

[94] *Diaz*, 116 F.4th at 471, n.5.

[95] *Smith v. United States*, 508 U.S. 223, 240 (1993) ("In 1989, 56 percent of all murders in New York City were drug related; during the same period, the figure for the Nation's Capital was as high as 80 percent.").

[96] *United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024).

[97] *Id.*

[98] *Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 17). Finally, the Court notes that this conclusion is consistent with rulings from courts across the country who have addressed the constitutionality of Section 922(g)(1) as applied to defendants with predicate drug possession and trafficking convictions. *See Jackson*, 110 F.4th at 1125–29 (holding Section 922(g)(1) constitutional as applied to a defendant with predicate sale of controlled substance offense); *United States v. Canales*, 702 F. Supp. 3d 322, 327–32 (E.D. Pa. 2023) (holding Section 922(g)(1)

**C.**    ***Whether Section 922(g)(1) is Unconstitutionally Vague***

Hines also argues that Section 922(g)(1) is void for vagueness. "A criminal statute survives…vagueness review if it defines the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[99] "[W]hen a vagueness challenge does not involve First Amendment freedoms, we examine the statute only in light of the facts of the case at hand."[100]

18 U.S.C. § 922(g)(1) provides that "it shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to possess in or affecting any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The prohibited conduct is clearly defined with sufficient definiteness.

**D.**    ***Whether Section 922(g)(1) Exceeds Congress' Power to Regulate Commerce***

Finally, Hines challenges 18 U.S.C. § 922(g)(1) on Commerce Clause grounds. However, he concedes that this argument is foreclosed by Fifth Circuit precedent.[101] In *Seekins*, the Fifth Circuit stated, "There is no additional requirement that, to apply the law constitutionally, the

---

constitutional as applied to a defendant with predicate drug trafficking convictions); *United States v. Goins*, 647 F. Supp. 3d 538, 554–55 (E.D. Ky. 2022) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate convictions for DUI and drug possession); *United States v. Carter*, No. CR 23-22, 2024 WL 4723236, at *1 (E.D. La. Nov. 8, 2024) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate drug trafficking and firearm convictions); *United States v. Wilson*, No. CR 22-238, 2024 WL 4436637, at *5 (E.D. La. Oct. 6, 2024) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate drug possession and firearm convictions); *United States v. Pearson*, No. 22-CR-271, 2023 WL 6216527, at *3 (E.D. Pa. Sept. 25, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug distribution and firearm convictions); *United States v. Blackshear*, No. 23-CR-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug and firearm convictions); *United States v. Reichenbach*, No. 4:22-CR-57, 2023 WL 5916467, at *8–10 (M.D. Pa. Sept. 11, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug distribution convictions).

[99] *United States v. Edwards*, 182 F.3d 333, 335 (5th Cir. 1999) (internal quotations and punctuation omitted).

[100] *Id.* at 335.

[101] *United States v. Seekins*, No. 21-10556, 2022 WL 3644185, at *2 (5th Cir. Aug. 24, 2022)

Government must prove some economic activity beyond the interstate movement of the weapon."[102] Therefore, Hines' argument that Section 922(g)(1) exceeds Congress' power to regulate commerce must fail.

### V. Conclusion

For the reasons discussed above, the Court finds that Section 922(g)(1) is constitutional both on its face and as applied to Hines. Hines' vagueness argument and Commerce Clause argument also fail. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Derrick Hines' Motion to Dismiss Indictment[103] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this ___1st___ day of April, 2025.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[102] *Id.*

[103] Rec. Doc. 30.